# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMC WEST HOUSING LP, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-18-959-D |
| NIBCO, INC., | ) ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is Defendant's Motion to Dismiss for Failure to State a Claim [Doc. No. 8]. Plaintiff has responded in opposition [Doc. No. 11], and Defendant has replied [Doc. No. 12]. The matter is fully briefed and at issue.

## BACKGROUND

This case arises out of the purchase and installation of allegedly defective plumbing products in homes owned and managed by Plaintiff at Tinker Air Force Base in Oklahoma City, Oklahoma. Plaintiff filed an Amended Complaint [Doc. No. 4] on October 25, 2018[1], alleging causes of action for breach of express and implied warranty, deceptive trade practices, manufacturer's products liability, negligence, and fraud. Defendant moves to dismiss [Doc. No. 8], asserting that the applicable statute of limitations bar Plaintiff's claims.[2] In response, Plaintiff asserts that the plumbing leaks in 2009 were isolated and did not start the running of the statute of limitations. Alternatively, Plaintiff argues that

---

[1] Plaintiff's original Complaint was filed on October 1, 2018.

[2] Defendant presents additional arguments for dismissal, but the Court only reaches this first argument because it is dispositive.

the triggering of the statute of limitations is a question of fact reserved for the jury. Finally, Plaintiff contends that Defendant's fraudulent conduct tolled the statute of limitations.

## STANDARD OF DECISION

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The "plausibility standard" announced in *Twombly* and *Iqbal* is not a "heightened standard" of pleading, but rather a "refined standard." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (*citing Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)). Under the "refined standard," plausibility refers "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik*, 671 F.3d at 1191; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Twombly*, 550 U.S. at 570).

Further, the Tenth Circuit has noted that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Khalik*, 671 F.3d at 1191 (*quoting Kansas Penn Gaming*, 656 F.3d at 1215). "Thus, [it has] concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions

or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" *Id*. (*quoting Robbins*, 519 F.3d at 1247).

"In other words, Rule 8(a)(2) still lives. There is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements." *Id.* It remains true that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting Twombly*, 550 U.S. at 555); *see also al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) ("*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden.").

Finally, "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [its] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192 (*citing Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Sanchez v. Hartley*, 810 F.3d 750, 756 (10th Cir. 2016) (*citing Twombly*, 550 U.S. at 556).

## DISCUSSION

According to Plaintiff's allegations, in 2008, Plaintiff contracted with Balfour Beatty Construction Company, Inc. ("Balfour") to construct 398 homes, which Plaintiff would, in turn, lease to service members stationed at Tinker AFB. Balfour's subcontractor, Horizon Plumbing, purchased Defendant's plumbing products based on Defendant's assurances and representations. Defendant had been in the plumbing business for more

3

than 100 years and had manufactured plumbing systems and parts for nearly that long.

Defendant manufactures, warrants, advertises, and sells various plumbing products, including the alleged defective PEX Products[3] at issue in this case. The plumbing systems installed in properties at Tinker AFB included tubing products manufactured by Defendant – PEX Tubing, PEX Fittings, and PEX Clamps.[4] Plaintiff asserts that the PEX fittings were "easily identified" by a stamp bearing Defendant's name on the brass insert fittings. [Doc. No. 4 at ¶ 41]. Defendant represented in its sales catalog that its PEX Tubing was the highest quality available, and that its cross-chemical binding process gave it "superior characteristics." *Id.* at ¶ 23. Defendant also advertised that its PEX Products were "chlorine-resistant, corrosion-resistant, freeze damage and abrasion resistant," and that "the excellent thermal properties of PEX are ideal for hot and cold water distribution." *Id.* at ¶ 25.

Although Defendant warranted that its PEX Tubing would be free from defects for 25 years, Plaintiff's homes "began to experience leaks resulting from cracks in Defendant's PEX Tubing as early as 2009." *Id.* at ¶ 62. Plaintiff alleges that Defendant's products deteriorated prematurely, due to the tubing's defective design and/or manufacture, which caused leaks and significant property damage throughout the homes. The leaks and

---

[3] PEX is an acronym for cross-linked polyethylene. Polyethylene ("PE") is a common plastic chemical compound. PEX refers to the cross-linking chemical bonding of the polyethylene across its molecular chains.

[4] PEX Tubing products are cross-linked polyethylene plumbing tubes. PEX Fittings are brass fittings required to connect the PEX Tubing. PEX Clamps are stainless steel clamps required for joining the PEX Tubing and PEX Fittings.

property damage are ongoing, with new leaks and damage being discovered on a weekly basis.

Defendant's PEX Tubing comes with an express warranty that guarantees no defects in materials and workmanship when the tubing is installed by a professional contractor like Horizon Plumbing.[5] On October 20, 2017, Plaintiff made demands on Defendant pursuant to the PEX warranty. Plaintiff alleges that the entire plumbing system for each of the 398 homes will have to be replaced.

Finally, Plaintiff alleges that any applicable statute of limitations has been tolled by Defendant's "knowing and active concealment and denial of the facts." *Id*. at ¶ 71. Plaintiff asserts that it could not have reasonably discovered the true nature of the allegedly defective PEX Products until their "catastrophic failure." *Id.* A Tolling Agreement was purportedly in place from December 6, 2017 until December 31, 2018. *Id*; *see also* [Doc. No. 4-2].

    A.    *Statute of Limitations*

"Although the statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'" *Solomon v. HSBC Mortgage Corp.*, 395 Fed. Appx. 494, 497 (10th Cir. 2010) (unpublished)[6] (*quoting Aldrich v. McCulloch*

---

[5] Plaintiff asserts that it has received or will receive assignments of warranty claims from Balfour and/or Horizon Plumbing. Plaintiff also asserts that, as property owner where Defendant's allegedly defective products have been installed, it is entitled to the benefit of Defendant's warranty.

[6] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

*Properties, Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980)). "If the allegations [of a complaint] show that relief is barred by the applicable statutes of limitations, the complaint is subject to dismissal for failure to state a claim." *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1096 (10th Cir. 2009) (internal quotation marks and citation omitted). This is so because "any party claiming the benefit of equitable tolling of a limitations period … [bears] the burden of proving justifiable circumstances." *Olson v. Federal Mine Safety & Health Review Comm'n*, 381 F.3d 1007, 1014 (10th Cir. 2004). In evaluating a Rule 12(b)(6) motion, the Court generally may not consider facts outside of those alleged in the complaint and its attached exhibits. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *see also Barnett v. Hall, Estill, et al.*, Case No. CV-18-64, 2018 WL 4038117, at *9 n. 4 (N.D. Okla. Aug. 23, 2018).

A federal court sitting in diversity applies state law for statute of limitations purposes. *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109-110 (1945). Moreover, state law determines when an action is commenced for statute of limitations purposes. *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980). Thus, Oklahoma law governs when Plaintiff's claims accrued, and Oklahoma's tolling rules apply as well. *See, e.g., Cook v. G.D. Searle & Co., Inc.*, 759 F.2d 800, 802 (10th Cir. 1985).

The statute of limitations for fraud is two years. OKLA. STAT. tit. 12, § 95(A)(3). A fraud claim does not accrue "until the discovery of the fraud." *Id.* The statute of limitations for a products liability claim against a manufacturer is two years. OKLA. STAT. tit. 12, § 95(A)(3); *Moss v. Polyco, Inc.*, 522 P.2d 622, 624 (Okla. 1974) (an action against a manufacturer for products liability is governed by the two-year statute of limitations for

actions for injuries to rights of another, not arising under contract); *O'Neal v. Black & Decker Mfg. Co.*, 523 P.2d 614, 615 (Okla. 1974).

The statute of limitations to be applied to Plaintiff's negligence claim is two years. OKLA. STAT. tit. 12, § 95(A)(3). The limitations period "begins to run from the date the negligent act occurred or from the date the plaintiff should have known of the act complained of." *Bank of Oklahoma, N.A. v. PriceWaterhouseCoopers, L.L.P.*, 251 P.3d 187, 191 (Okla. Civ. App. 2011) (internal quotation marks and citation omitted); *see also Marshall v. Fenton, Fenton, Smith, Reneau and Moon, P.C.*, 899 P.2d 621, 624 (Okla. 1995) (the statute of limitations begins to run when the negligent act has occurred and the plaintiff has suffered damages).

Plaintiff's deceptive trade practices claim under the Oklahoma Consumer Protection Act has a three-year statute of limitations. OKLA. STAT. tit. 12, § 95(A)(2); *Brashears v. Sight 'N Sound Appliance Centers, Inc.*, 981 P.2d 1270, 1274 (Okla. Civ. App. 1999). Plaintiff's breach of warranty claims under the Uniform Commercial Code have a five-year statute of limitations. OKLA. STAT. tit. 12, § 2-725(1); *Daugherty v. Farmers Coop. Ass'n*, 689 P.2d 947, 951 (Okla. 1984).

Oklahoma also follows the discovery rule, which allows statutes of limitation in certain tort cases to be tolled "until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury." *Calvert v. Swinford*, 382 P.3d 1028, 1033 (Okla. 2016). "Statutes of limitation were not designed to help those who negligently refrain from prosecuting inquiries plainly suggested by the facts." *Daugherty*, 689 P.2d at 951. Rather, a plaintiff is charged with knowing facts that he could have discovered in the

exercise of reasonable diligence. *Id.* Although a defendant who conceals facts relevant to a claim can be estopped from raising the statute of limitations bar, a plaintiff "cannot set up successfully a fraudulent concealment of his cause of action if his failure to discover it is attributable to his own negligence …." *Kansas City Life Ins. Co. v. Nipper*, 51 P.2d 741, 747 (Okla. 1935).

The Amended Complaint states that "Plaintiff began to experience leaks resulting from cracks in Defendant's PEX Tubing as early as 2009."[7] [Doc. No. 4 at ¶ 62]. However, Plaintiff did not make demands on Defendant pursuant to the warranty until eight years later. Plaintiff asserts in its response brief that the alleged defect in the PEX products "was unknowable and not reasonably ascertainable until Defendant's PEX products failed on a catastrophic and nearly universal level many years later."[8] [Doc. No. 11 at 7]. Thus, Plaintiff contends that the limitations period did not begin to run until then.[9] The Court disagrees.

As early as 2009, Plaintiff was admittedly aware of a problem with Defendant's

---

[7] Pursuant to FED. R. CIV. P. 9(f), an allegation of time is material when testing the sufficiency of a pleading.

[8] Plaintiff asserts in its response brief that only a small number of leaks with unknown origin occurred in 2009. [Doc. No. 11 at 4, n. 1 and 6-7, 10-11]. This is inconsistent with the allegations in Plaintiff's Amended Complaint. To the extent that Plaintiff's response references factual allegations beyond the scope of Plaintiff's Amended Complaint, the Court has disregarded those allegations, as Plaintiff "may not effectively amend [its] Complaint by alleging new facts in [its] response to a motion to dismiss." *Barnett v. Hall, Estill, et al.*, CV-18-64, 2018 WL 4038117, at * 9 n. 4 (N.D. Okla. Aug. 23, 2018).

[9] Notably absent from Plaintiff's Amended Complaint and response brief is the date of the "catastrophic failure." [Doc. No. 4 at ¶¶ 28, 71]; [Doc. No. 11 at 4, 11, 20].

PEX Tubing. Yet, eight years passed before Plaintiff made demands on the warranty and another year passed before Plaintiff filed suit.[10] Plaintiff's asserted failure to know the exact cause of the leaks does not toll the running of the statute of limitations. *See, e.g., Samuel Roberts Noble Found., Inc. v. Vick*, 840 P.2d 619, 626 (Okla. 1992) (the limitations period for the property owner's negligence claim against the soil engineer was not tolled where owner observed doors sticking and tiles popping off, even though owner was uncertain as to the reasons for the problem); *Kowalsky v. S & J Operating Co.*, 539 Fed. Appx. 908, 915 (10th Cir. Oct. 30, 2013) (unpublished)[11] (the landowners' failure to know the exact cause of subsidence did not toll the statute of limitations).

In affirming summary judgment for the defendant on statute of limitations grounds, the Tenth Circuit in *Kowalsky* pointed to a similar case decided by the Kansas Supreme Court – *Friends Univ. v. W.R. Grace & Co.*, 608 P.2d 936, 938 (Kan. 1980). *Kowalsky*, 539 Fed. Appx. at 915-916. Friends University sued the manufacturer of materials used to construct the university's new library building after the roof leaked. *Friends Univ.*, 608 P.2d at 938. The roof was built in 1969, and in 1970 it started to leak each time it rained. *Id.* In 1975, a roof expert was retained, who determined that a defect in the roofing material caused the leaking. *Id.* at 939. The Kansas Supreme Court determined that the plaintiff's failure to know the exact cause of the leaks did not toll the two-year statute of limitations when a problem was apparent by at least 1972. *Id*. at 940, 942.

---

[10] The Tolling Agreement tolled claims as of December 6, 2017, long after the applicable statute of limitations had run on each claim.

[11] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

> The fact Friends had not determined the exact scientific cause of the leaking did not toll the running of the statute. Fully cognizant that a severe problem existed, Friends elected to seek nonjudicial resolution of the controversy. Simply stated, Friends lost its right to a judicial determination of the dispute by its own delay and inactivity.
>
> …
>
> [A] new roof on a new building was leaking. The cause had to be defective design, materials, workmanship, or some combination thereof. At any time Friends could easily have obtained an expert opinion on the precise cause or causes for the leaking roof.

*Id.* at 940, 942.

The same holds true here. These were newly constructed homes with leaky pipes. The cause had to be defective design, materials, workmanship or a combination thereof. At any time, Plaintiff could have obtained an expert opinion on the precise cause or causes of the leaking pipes. Rather, Plaintiff waited until October 2018 to file a lawsuit.

Curiously, in its response, Plaintiff contends that it has not alleged in the Amended Complaint that the "early leaks are even related to the specific defects about which it is now suing and thus there is no basis to conclude, based on the four corners of the Amended Complaint, that those leaks should have tipped Plaintiff off to the universal nature of the PEX Product Defects." [Doc. No. 11 at 11, n. 3]. Plaintiff's attempt to recraft its allegations in its response brief are unpersuasive. The Amended Complaint repeatedly references the defective PEX Tubing and alleges that "leaks resulting from cracks in Defendant's PEX Tubing [began] as early as 2009." [Doc. No. 4 at ¶ 62]. Simply stated, Plaintiff knew, or through the exercise of reasonable diligence, should have known of its injury in 2009. *See Calvert v. Swinford*, 382 P.3d 1028, 1033 (Okla. 2016).

Alternatively, Plaintiff asserts that Defendant's fraudulent conduct tolled the statute of limitations. Fraudulent concealment is an implied exception to the statute of limitations defense. *Kansas City Life Ins. Co. v. Nipper*, 51 P.2d 741, 747 (Okla. 1935). "[A] party who wrongfully conceals material facts … is not allowed to take advantage of his own wrong by pleading the statute, the purpose of which is to prevent wrong and fraud." *Id*. (internal quotation marks omitted). However, the "mere failure to disclose that a cause of action exists is not sufficient to prevent the running of the statute. There must be something more; some actual artifice to prevent knowledge of the fact; some affirmative act of concealment or some misrepresentation to exclude suspicion and prevent inquiry." *Id*. (internal quotation marks omitted). Moreover, a plaintiff relying on fraudulent concealment to toll the statute of limitations "'must not only show that he did not know the facts constituting a cause of action, but that he exercised reasonable diligence to ascertain said facts.'" *Masquat v. DaimlerChrysler Corp.*, 195 P.3d 48, 55 (Okla. 2008) (*quoting Nipper*, 51 P.2d at 742). "'[I]f the means of knowledge exist and the circumstances are such as to put a man of ordinary prudence on inquiry, it will be held that there was knowledge of what could have been readily ascertained by such inquiry' and a plaintiff cannot successfully assert fraudulent concealment in answer to the defense of the statute of limitations." *Masquat*, 195 P.3d at 55 (*quoting Nipper*, 51 P.2d at 747).

Although Plaintiff attempts to allege fraudulent concealment in paragraph 71 of the Amended Complaint, Plaintiff fails to sufficiently plead fraudulent concealment to toll the statute of limitations. Defendant's acts of concealment, as alleged by Plaintiff, did not prevent Plaintiff from discovering the cause of its injury. Plaintiff's own failure to exercise

11

diligence in pursuing its claims against Defendant precludes the application of fraudulent concealment in this case. *Daugherty v. Farmers Coop. Ass'n,* 689 P.2d 947, 951 (Okla. 1984). The Tenth Circuit draws a distinction between acts underlying a plaintiff's potential fraud claim and acts establishing fraudulent concealment to toll the statute of limitations. *Legacy Crossing, L.L.C. v. Travis Wolff & Co.*, LLP, 229 Fed. Appx. 672, 681 (10th Cir. April 9, 2007) (unpublished).[12] In *Legacy Crossing*, the plaintiff argued that one act could constitute both fraud and fraudulent concealment at the same time, *i.e.,* issuance of a fraudulent audit report. *Id.* at 680-681. The Tenth Circuit held that "under the fraudulent concealment doctrine there must be a separate affirmative act of concealment intended to cover up the original fraudulent act. Otherwise, the exception (tolling for fraudulent concealment) would become the rule. In fraud cases, the limitations period would never begin to run until the defrauding party committed an affirmative act to reveal his fraud." *Id.* at 681. The acts alleged by Plaintiff in paragraphs 28, 30, 71 and 118-124 of the Amended Complaint are the underlying allegations for Plaintiff's fraud claim. Thus, they cannot form the basis for fraudulent concealment.

Although a "catastrophic failure," as Plaintiff asserts, may be "useful in proving a fraud claim," it is not required "in order to possess the means to discover that an alleged fraud had occurred." *Id.* at 679. In other words, Plaintiff "seems to confuse the necessary level of information to start the running of the statute of limitations with the necessary level of evidence to win on the merits." *Id.* As early as 2009, Plaintiff had formed the belief

---

[12] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

12

that leaks were "resulting from cracks in Defendant's PEX Tubing." [Doc. No. 4 at ¶ 62]. Further, Defendant's PEX Fittings were "easily identified by [Defendant's] stamp placed on the brass insert fittings." *Id*. at ¶ 41. In summary, Plaintiff has not alleged any facts in its Amended Complaint to show that it did not have the means to discover the injury until the alleged catastrophic failure, which, again, bears no specified date or range of dates.

Here, it is apparent from the face of the Amended Complaint that Plaintiff was aware of its injury in 2009. Plaintiff has pled no facts to plausibly support a contrary inference. Thus, Plaintiff's claims are time-barred, and dismissal is warranted.

### B. Leave to Amend

Having determined that the Amended Complaint must be dismissed, the Court must consider whether leave to amend should be granted. Pursuant to FED. R. CIV. P. 15, leave to amend should be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2). However, such leave is not automatic and may be precluded by various factors, including futility and undue delay. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Where the court dismisses a cause of action for failure to state a claim, it may exercise its discretion to allow an amended complaint to cure the deficiency in the original complaint; however, it is not required to do so if the circumstances and the governing law render an amendment futile. *Bauchman v. West High Sch.*, 132 F.3d 542, 559 (10th Cir. 1997). However, "'if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.'" *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) (*quoting* 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1483, at 587 (2d ed. 1990)). Although amendment

may be futile here, the Court is unwilling to state, at this stage of the proceedings, that Plaintiff is unable to state a claim upon which relief may be granted. Accordingly, dismissal is without prejudice to Plaintiff's right to file an amended complaint, if it can do so consistent with the restrictions of FED. R. CIV. P. 11(b).

## CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss for Failure to State a Claim [Doc. No. 8] is GRANTED. Plaintiff's action against Defendant is dismissed without prejudice to Plaintiff's right to amend its complaint. Plaintiff may file any amended complaint within 21 days of this Order; failure to do so will result in the dismissal of this action with prejudice.

**IT IS SO ORDERED** this 18th day of September 2019.

TIMOTHY D. DeGIUSTI
Chief United States District Judge