# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

AMC WEST HOUSING LP, )
)
            Plaintiff, )
  v. )   Case No. CIV-18-959-D
)
NIBCO, INC., )
)
           Defendant. )

## ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim [Doc. No. 22]. Plaintiff has responded in opposition [Doc. No. 23], and Defendant has replied [Doc. No. 24]. The matter is fully briefed and at issue.

## BACKGROUND

This case arises out of the purchase and installation of allegedly defective plumbing products in homes owned and managed by Plaintiff at Tinker Air Force Base in Oklahoma City, Oklahoma. Plaintiff filed an Amended Complaint [Doc. No. 4] on October 25, 2018[1], alleging causes of action for breach of express and implied warranty, deceptive trade practices, manufacturer's products liability, negligence, and fraud. Defendant moved to dismiss [Doc. No. 8], asserting that the applicable statutes of limitation barred Plaintiff's claims. The Court granted Defendant's motion and dismissed Plaintiff's claims without prejudice. [Doc. No. 20]. The Court granted Plaintiff leave to amend its Amended

---

[1] Plaintiff's original Complaint was filed on October 1, 2018.

Complaint.

Within the time set by the Court, Plaintiff filed a Second Amended Complaint [Doc. No. 21], alleging causes of action for breach of express and implied warranty, manufacturer's products liability, and negligence. Defendant now moves to dismiss Plaintiff's Second Amended Complaint, asserting that Plaintiff's claims are barred by the applicable statutes of limitation, that Plaintiff's tort claims are barred by the economic loss doctrine, and that Plaintiff has failed to state a claim for breach of express warranty. In response, Plaintiff asserts that it did not have sufficient knowledge to discover the latent defects in the PEX Products or to initiate an investigation until 2017, when more than 200 leaks occurred in a single year. Alternatively, Plaintiff argues that the triggering of the statute of limitations is a question of fact reserved for the jury or that each pipe failure gives rise to a separate cause of action, the clear majority of which were timely filed. Further, Plaintiff contends that the economic loss doctrine does not bar its tort claims, and that it has stated a claim for breach of express warranty.

## STANDARD OF DECISION

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The "plausibility standard" announced in *Twombly* and *Iqbal* is not a "heightened standard" of pleading, but rather a "refined

standard." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)). Under the "refined standard," plausibility refers "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik*, 671 F.3d at 1191; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

Further, the Tenth Circuit has noted that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Khalik*, 671 F.3d at 1191 (quoting *Kan. Penn Gaming*, 656 F.3d at 1215). "Thus, [it has] concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" *Id.* (quoting *Robbins*, 519 F.3d at 1247).

"In other words, Rule 8(a)(2) still lives. There is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements." *Id.* It remains true that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555); *see also al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) ("*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden.").

Finally, "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a

prima facie case in [its] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Sanchez v. Hartley*, 810 F.3d 750, 756 (10th Cir. 2016) (citing *Twombly*, 550 U.S. at 556).

## DISCUSSION

According to Plaintiff's allegations, in 2008, Plaintiff contracted with Balfour Beatty Construction Company, Inc. ("Balfour") to construct 398 homes, which Plaintiff would, in turn, lease to service members stationed at Tinker AFB. Balfour's subcontractor, Horizon Plumbing, purchased Defendant's plumbing products based on Defendant's assurances and representations. Defendant has been in the plumbing business for almost 100 years and manufactures, warrants, advertises, and sells various plumbing products, including the alleged defective PEX Products[2] at issue in this case. The plumbing systems installed in properties at Tinker AFB included products manufactured by Defendant, such as PEX Tubing, PEX Fittings, and PEX Clamps.[3]

Defendant represented in its sales catalog that its PEX Tubing was the highest

---

[2] PEX is an acronym for cross-linked polyethylene. Polyethylene ("PE") is a common plastic chemical compound. PEX refers to the cross-linking chemical bonding of the polyethylene across its molecular chains.

[3] PEX Tubing products are cross-linked polyethylene plumbing tubes. PEX Fittings are brass fittings required to connect the PEX Tubing. PEX Clamps are stainless steel clamps required for joining the PEX Tubing and PEX Fittings.

quality available, and that its cross-chemical binding process gave it "superior characteristics." Second Am. Compl. at ¶ 41 [Doc. No. 21]. Defendant also advertised that its PEX Products were "chlorine-resistant, corrosion-resistant, freeze damage and abrasion resistant," and that "the excellent thermal properties of PEX are ideal for hot and cold water distribution." *Id.*

Although Defendant warranted that its PEX Tubing would be free from defects for 25 years, "[l]eaks occurred in completed houses as a result of cracks in PEX Products as early as 2009." *Id.* at ¶ 16. However, Plaintiff alleges that it did not associate the leaks in the newly constructed homes with cracks or defects in the PEX Products until 2017— "when the single-year leak rate drastically increased and prompted an investigation." *Id*. The homes were built in phases: 144 homes were completed in 2009; 30 in 2010; 154 in 2011; and 70 homes in 2012. The number of leaks rose steadily from 2009 to 2016, starting with four reported leaks in 2009 and culminating with thirty reported in 2016.[4] The thirty leaks reported in 2016, paled in comparison to the number reported in 2017—which was 205 leaks. After 2017, leaks occurred monthly at unusual rates compared to years prior to 2017, which prompted Plaintiff to remove and replace all PEX Products.

Plaintiff asserts that the pipes were encased in walls, ceilings, and foundations and were not readily accessible or visible for inspection. Further, Plaintiff alleges that until the

---

[4] Water leaks in the houses occurred as follows: in 2009, 4 leaks occurred; in 2010, 5 leaks occurred; in 2011, 7 leaks occurred; in 2012, 1 leak occurred; in 2013, 6 leaks occurred; in 2014, 13 leaks occurred; in 2015, 16 leaks occurred; in 2016, 30 leaks occurred; and, in 2017, 205 leaks occurred.

5

"catastrophic number" of leaks in 2017, the leaks that had occurred in the homes were isolated and occurred in no discernable pattern.

Defendant's PEX Products come with an express warranty that guarantees no defects in materials and workmanship when the tubing is installed by a professional contractor like Horizon Plumbing.[5]  On October 20, 2017, Plaintiff made demands on Defendant pursuant to the PEX warranty.  The parties entered a Tolling Agreement from December 6, 2017 until December 31, 2018.  Second Am. Compl. at Ex. 2 [Doc. No. 21-2].

Plaintiff alleges that more than 200 homes were damaged because of leaks from defective PEX Products.  After learning of the alleged defects in 2017, Plaintiff removed and replaced Defendant's products from all of the homes—even those that had not yet experienced leaks—to avoid the risk of future property damage.

    *A.    Plaintiff's claims are not barred by the applicable statutes of limitation.*

A federal court sitting in diversity applies state law for statute of limitations purposes. *Guar. Trust Co. of New York v. York*, 326 U.S. 99, 109–10 (1945).  Moreover, state law determines when an action is commenced for statute of limitations purposes. *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980).  Thus, Oklahoma law governs when Plaintiff's claims accrued, and Oklahoma's tolling rules apply as well.  *See, e.g., Cook v. G.D. Searle & Co., Inc.*, 759 F.2d 800, 802 (10th Cir. 1985).

---

[5] Plaintiff asserts that Balfour assigned Defendant's PEX warranty to Plaintiff. Plaintiff also asserts that it is entitled to the benefit of Defendant's warranty as the owner of property where Defendant's allegedly defective products have been installed.

The statute of limitations for a products liability claim against a manufacturer is two years. OKLA. STAT. tit. 12, § 95(A)(3); *Moss v. Polyco, Inc*., 522 P.2d 622, 624 (Okla. 1974) (an action against a manufacturer for products liability is governed by the two-year statute of limitations for actions for injuries to rights of another, not arising under contract); *O'Neal v. Black & Decker Mfg. Co*., 523 P.2d 614, 615 (Okla. 1974).

The statute of limitations to be applied to Plaintiff's negligence claim is two years. OKLA. STAT. tit. 12, § 95(A)(3). The limitations period "begins to run from the date the negligent act occurred or from the date the plaintiff should have known of the act complained of." *Bank of Okla., N.A. v. PriceWaterhouseCoopers, L.L.P*., 251 P.3d 187, 191 (Okla. Civ. App. 2011) (internal quotation marks and citation omitted); *see also Marshall v. Fenton, Fenton, Smith, Reneau and Moon, P.C*., 899 P.2d 621, 624 (Okla. 1995) (the statute of limitations begins to run when the negligent act has occurred and the plaintiff has suffered damages).

Plaintiff's breach of warranty claims under the Oklahoma Uniform Commercial Code have a five-year statute of limitations. OKLA. STAT. tit. 12A, § 2-725(1); *Daugherty v. Farmers Coop. Ass'n*, 689 P.2d 947, 951 (Okla. 1984).

Oklahoma also follows the discovery rule, which allows statutes of limitation in certain tort cases to be tolled "until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury."[6] *Calvert v. Swinford*, 382 P.3d 1028, 1033

---

[6] Generally, a breach of warranty claim accrues when the goods are delivered. However, where the warranty "explicitly extends to future performance of the goods and discovery of the breach" has to await performance, "the cause of action accrues when the breach is or should have been discovered." OKLA. STAT. tit. 12A, § 2-725(2).

7

(Okla. 2016). Applicability of the discovery rule is case specific. *See Woods v. Prestwick House, Inc.*, 247 P.3d 1183, 1190 (Okla. 2011); *Lovelace v. Keohane*, 831 P.2d 624, 629 (Okla. 1992) (the applicability of the discovery rule must be made on a case-by-case basis). The purpose of the rule is to exclude the time in which "the injured party is reasonably unaware that an injury has been sustained so that people in that class have the same rights as those who suffer an immediately ascertainable injury." *Calvert*, 382 P.3d at 1033.

The question here is whether the discovery rule should apply to toll the limitations period where Plaintiff alleges that it did not associate the leaks in the newly constructed homes with cracks or defects in the PEX Products until 2017—"when the single-year leak rate drastically increased and prompted an investigation." Second Am. Compl. at ¶ 16 [Doc. No. 21]. Under the discovery rule, the statute of limitations does not begin to run until the "acquisition of sufficient information which, if pursued, would lead to the true condition of things." *Daugherty*, 689 P.2d at 950–51; *Okla. ex rel. Doak v. Eisneramper LLP*, No. CIV-16-224-C, 2016 WL 3963211, at *2 (W.D. Okla. July 21, 2016). This is generally a question of fact. *See, e.g., Samuel Roberts Noble Found., Inc. v. Vick*, 840 P.2d 619, 626 (Okla. 1992).

Although Defendant is correct that the number of alleged leaks rose steadily from 2009 to 2016, the thirty leaks reported in 2016 paled in comparison to the 205 leaks reported in 2017. Additionally, Plaintiff alleges that until the "catastrophic number" of leaks in 2017, the leaks that had occurred in the homes were isolated and occurred in no discernable pattern. Further, the pipes were allegedly encased in walls, ceilings, and foundations and were not readily accessible or visible for inspection. The Oklahoma

8

Supreme Court has held that where evidence regarding application of the discovery rule is conflicting, the question of when the plaintiff knew or should have known is a question of fact for the jury to decide. *See Dig. Design Grp., Inc. v. Info. Builders, Inc*., 24 P.3d 834, 842 (Okla. 2001). Accepting the well-pled allegations in the Second Amended Complaint as true, Plaintiff has pled sufficient facts from which the Court may reasonably infer that Plaintiff was not aware of the alleged defects in the PEX Products until 2017. That is sufficient at this stage of the proceedings to allow Plaintiff's pleading to stand. *See Doak*, 2016 WL 3963211, at *2 (where the parties dispute which facts are sufficient to place the plaintiff on notice that his claims have accrued, the statute of limitations is not amenable to resolution at the motion to dismiss stage).

Further, Plaintiff alleges that Defendant's PEX warranty explicitly extends to future performance of the PEX Products. Second Am. Compl. at ¶ 64 [Doc. No. 21]. Plaintiff has attached the warranty to its Second Amended Complaint. [Doc. No. 21-1]. The Court has reviewed the warranty, and concludes that it does extend to future performance of the PEX Products. Specifically, it warrants that the PEX Products when used "under normal conditions" will "be free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor." *Id.* Thus, Plaintiff has pled sufficient facts from which the Court may reasonably infer that Plaintiff's breach of warranty claims, like its tort claims, accrued when the alleged breach was discovered in 2017.

Additionally, the facts alleged in the Second Amended Complaint do not directly contradict the original allegations in the First Amended Complaint. The subsequent

allegations simply explain or clarify the events that were alleged previously. Plaintiff asserts in both pleadings that leaks resulting from cracks in Defendant's PEX Products occurred as early as 2009. In the First Amended Complaint, Plaintiff alleged that the true defective nature of the products, however, was not discovered until their "catastrophic failure." First Am. Compl. at ¶ 71 [Doc. No. 4]. Plaintiff clarifies in the Second Amended Complaint that the catastrophic failure occurred in 2017, when 205 leaks occurred—thus prompting a property-wide investigation. Plaintiff also explains that the houses were completed in stages and breaks down by year the completed construction and number of leaks reported. This summary provides further context to Plaintiff's original allegation that the early leaks were isolated in number and occurred in no discernable pattern. Thus, contrary to Defendant's argument, the additional facts do not contradict the previous facts pled, but rather provide a broader view of the circumstances surrounding the leaks at Tinker AFB.

> B. *The economic loss doctrine does not bar Plaintiff's tort claims.*

Plaintiff asserts in Counts Five and Six of the Second Amended Complaint a manufacturer's products liability claim, alleging that Defendant's PEX Products were defectively designed and manufactured. Plaintiff also claims in Count Seven that Defendant was negligent in designing and manufacturing a defective product.

Defendant asserts that the economic loss doctrine bars Plaintiff's tort claims. The Oklahoma Supreme Court adopted the doctrine in *Waggoner v. Town & Country Mobile Homes, Inc.,* 808 P.2d 649, 653 (Okla. 1990). In *Waggoner*, the court held that "no action lies in manufacturers' products liability for injury only to the product itself resulting in

purely economic loss." *Id.* The court agreed with the reasoning of the United States Supreme Court in *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986), that "whether stated in negligence or strict liability, no products-liability claim lies . . . when the only injury claimed is economic loss." *Id.* at 876. The Oklahoma Supreme Court further held in *Okla. Gas & Elec. Co. v. McGraw-Edison Co.*, 834 P.2d 980, 982 (Okla. 1992), that a plaintiff may not recover in tort for damages categorized as "consequential economic harm flowing from" injury to the product itself. In *McGraw-Edison*, involving the explosion of a transformer, "damages for clean-up, repair and reinstallation of the transformer, rental and handling of a temporary transformer and lost profits" were found to be consequential economic losses. *Id.* at 981.

According to Defendant, Plaintiff alleges only pure economic loss, i.e., damage to the PEX Products and the consequential economic harm flowing from that injury. Plaintiff argues the tort claims should be allowed to proceed under *Dutsch v. Sea Ray Boats, Inc.*, 845 P.2d 187, 193–94 (Okla. 1992), which held that if a plaintiff alleges "other damages," either personal injury or injury to other property, the plaintiff may recover under tort theories. Here, Plaintiff alleges that the defective PEX Products damaged "other property," including personal property inside the homes. "Recovery, under the doctrine of manufacturers' products liability, is allowed for . . . damage to property other than damage to the product itself." *Waggoner*, 808 P.2d at 652 (citing *Kimbrell v. Zenith Radio Corp.*, 555 P.2d 590 (Okla. 1976)). In *Kimbrell*, a television set allegedly caused extensive fire damage to the plaintiff's home because of a defect in material, workmanship, and design. *Kimbrell*, 555 P.2d at 590. Because Plaintiff asserts injury to other property in addition to

11

the allegedly defective PEX Products, the Court finds that Oklahoma's economic loss doctrine is inapplicable.

> C. *Plaintiff has alleged sufficient facts to state a claim for breach of express warranty.*

Defendant asserts (1) that its express warranty covers only manufacturing defects, not design defects; and (2) that Plaintiff has not alleged any facts to support a manufacturing or design defect claim because Plaintiff has not identified "a theory as to the cause of the defect." Def.'s Mot. to Dismiss at 15 [Doc. No. 22]. Defendant does not cite to any Oklahoma authority to support these positions.

The Court has reviewed the express warranty, which was attached to Plaintiff's Second Amended Complaint, and concludes that the warranty does not appear to include any language limiting the warranty's reach to only manufacturing defects. [Doc. No. 21-1]. Further, under Oklahoma law, the "[i]dentification of an existing defect is not essential to recovery upon express warranty." *Osburn v. Bendix Home Sys., Inc.*, 613 P.2d 445, 448 (Okla. 1980). In *Osburn*, the manufacturer of a mobile home appealed a jury's verdict finding for the buyer in the buyer's breach-of-warranty suit against the manufacturer. *Id*. at 446. The manufacturer asserted that the record was devoid of evidence with respect to any defect in material or workmanship. *Id*. at 448. The Oklahoma Supreme Court concluded that although the evidence did not identify the factor precipitating the water leaks, there was sufficient proof from which the jury could infer that the problem was attributable to faulty manufacture. *Id*. at 449.

Plaintiff alleges in the Second Amended Complaint that Defendant's PEX Products

12

"suffer from undisclosed design or manufacturing defects that cause them to fail prematurely." Second Am. Compl. at ¶ 44 [Doc. No. 21]. The hidden defects allegedly develop after several years and are detectable only after removal and microscopic examination. *Id.* at ¶ 45. Specifically, Plaintiff alleges that Defendant's PEX Tubing suffers from a design or manufacturing defect that leads to premature oxidative failure and creep rupture[7]; its PEX Fittings suffer from a design or manufacturing defect because they are predisposed to prematurely fail as a result of dezincification corrosion; and its PEX Clamps are predisposed to premature failure as a result of chloride-induced stress corrosion cracking. *Id.* at ¶ 46–48. Further, Plaintiff alleges that Defendant knew or should have known that other consumers had experienced water damage caused by slow growth cracking mechanisms consistent with oxidative failure or creep rupture. *Id.* at ¶ 51. Accordingly, the Court finds that Plaintiff has alleged sufficient facts to support a breach of express warranty claim.

## CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim [Doc. No. 22] is **DENIED**.

---

[7] Creep is a time-dependent deformation of a material while under an applied load that is below its yield strength. It most often occurs at an elevated temperature, but some materials creep at room temperature. Creep ends in rupture, if steps are not taken to stop it. North Central Collaboration for Education in Nondestructive Testing, *Creep and Stress Rupture Properties*, NDT RESOURCE CENTER, https://www.nde-ed.org/EducationResources/ CommunityCollege/Materials/Mechanical/Creep.htm. (last visited Jan. 24, 2020).

**IT IS SO ORDERED** this 28th day of January 2020.

TIMOTHY D. DeGIUSTI
Chief United States District Judge