## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AMC WEST HOUSING LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-959-D |
| | ) | |
| NIBCO, INC., | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BALFOUR BEATTY CONSTRUCTION | ) | |
| COMPANY, INC., and | ) | |
| HORIZON LLC, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## ORDER

Before the Court is a Motion to Dismiss filed on behalf of third-party defendant Balfour Beatty Construction Company, Inc. ("Balfour") [Doc. No. 50] and a Motion to Dismiss filed on behalf of third-party defendant Horizon, LLC ("Horizon") [Doc Nos. 56]. Both motions seek dismissal of defendant/third-party Plaintiff NIBCO, Inc.'s ("NIBCO") Third-Party Complaint [Doc. No. 44] pursuant to Fed. R. Civ. P. 12(b)(6). NIBCO has responded to each motion [Doc Nos. 54, 66] and Horizon has replied. [Doc. No. 67]. The matter is fully briefed and at issue.

## BACKGROUND

This case arises out of the purchase and installation of allegedly defective plumbing products in homes owned and managed by Plaintiff AMC West Housing LP ("AMC") at

Tinker Air Force Base in Oklahoma City, Oklahoma. AMC's Second Amended Complaint [Doc. No. 21] alleges that certain PEX[1] plumbing products manufactured by NIBCO failed prematurely, causing numerous leaks and damage to the homes. AMC brings claims against NIBCO for breach of express and implied warranty, manufacturer's products liability, and negligence.

NIBCO's Third-Party Complaint seeks contribution and indemnity from Balfour, the contractor responsible for constructing the homes, and Horizon, the plumbing subcontractor who selected and installed the PEX products. The Third-Party Complaint denies liability for AMC's losses and alleges that Balfour and Horizon's improperly designed plumbing systems and improper installation of the PEX products caused the leaks. Balfour and Horizon both move to dismiss, arguing that NIBCO has failed to state a claim for contribution or indemnity and that the claims are barred by Oklahoma's statute of repose.

## STANDARD OF DECISION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint does not need detailed factual

---

[1] PEX is an acronym for cross-linked polyethylene, a common plastic chemical compound. *See* Second Am. Compl. ¶ 4.

assertions, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a defendant's liability" will not suffice. *Id.* (internal quotation omitted). The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under this standard, all well-pled factual allegations are accepted as true. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). Conclusory statements, however, are not entitled to the assumption of truth and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## DISCUSSION

### I. The Indemnity Claim

Under Oklahoma law, the right of indemnity exists "when one who is only constructively liable to the injured party and is in no manner responsible for the harm is compelled to pay damages for the tortious act of another." *Caterpillar Inc. v. Trinity Indus., Inc.*, 134 P.3d 881, 886 (Okla. Civ. App. 2006). The right generally arises "out of an express (contractual) or implied (vicarious) liability," but is always premised "on the understanding that a legal relationship exists between the parties." *Nat'l Union Fire Ins. Co. v. A.A.R. W. Skyways, Inc.*, 784 P.2d 52, 54 (Okla. 1989). Thus, "[i]n the case of concurrent or joint tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity

exists on behalf of either against the other." *Id.* at 55 (internal quotation omitted).

Here, NIBCO's indemnification claim is based not on contractual or vicarious liability, but on the statutory indemnity provided for in Okla. Stat. tit. 12 § 832.1. This statute provides that

> A. A manufacturer shall indemnify and hold harmless a seller against loss arising out of a product liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.
>
> * * *
>
> D. For purposes of this section, a wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer's instructions shall be considered a seller.

Section 832.1 thus permits a non-manufacturing retailer or distributor that is held strictly liable for damage caused by a defective product to seek indemnification from the manufacturer of the product. *Id.*

NIBCO asserts that it is properly characterized as a seller, and therefore entitled to indemnification, because it merely supplied component parts that were included in a finished product – the plumbing systems in the homes – that were manufactured or designed by Balfour and Horizon. A similar argument was made in *Honeywell v. GADA Builders, Inc*., 271 P.3d 88 (Okla. Civ. App. 2011). There, a homeowner brought a products liability action against a homebuilder, the plumbing subcontractor responsible for installing the gas distribution system, and the manufacturer who supplied the steel tubing used in the gas distribution system. *Id.* at 91. After the defendants settled the claim, the builder and the plumber sought indemnification from the manufacturer of the steel

4

tubing pursuant to § 832.1. *Id.* The manufacturer argued that the builder was not a seller or distributer as contemplated by the statute and indemnification was therefore not required. *Id.* at 93. The court rejected this interpretation of the statute and explained that

> Plaintiff contracted with Builder to build a home, which inherently included purchasing all of the building materials. Builder subcontracted with Plumber to install the gas distribution system, which included purchasing the CSST and other materials used in the system. Plumber purchased the CSST from Gastite, the manufacturer. Plumber was certified by Gastite to install the CSST. The purpose of § 832.1 is to require the manufacturer to indemnify those in the distribution chain against expenses and damages in product liability actions. For purposes of this statute, the builder of a house is a 'seller' of the products used in the construction of the house.

*Id.* at 95.

Like the builder and subcontractor in *Honeywell*, Balfour and Horizon are entities in the chain of distribution and are properly characterized as sellers – not manufacturers – under § 832.1. Thus, if anything, it is Balfour and Horizon who could seek indemnification from NIBCO if they were held strictly liable for a PEX product defect, not the other way around. In attempting to construe the statute otherwise, NIBCO ignores the clear holding of *Honeywell*.

Further, NIBCO's argument that a manufacturer of non-defective component parts can seek indemnification from an assembler or designer who negligently uses the component to create a defective end product is misplaced. Section 832.1 permits indemnification from a manufacturer for a loss arising out of a product liability action. Assuming that NIBCO is found liable on AMC's products liability claim, that liability will be premised on NIBCO's design or manufacture of defective PEX products. The fact that

Balfour or Horizon may have also acted negligently in designing or installing the plumbing systems would not relieve NIBCO of its liability for designing a defective product. Put another way, NIBCO would not be entitled to indemnification from Balfour or Horizon on its products liability claim simply because Balfour or Horizon may also be tortfeasors. *See Woolard v. JLG Indus., Inc*., 210 F.3d 1158, 1178 (10th Cir. 2000) (explaining that "Oklahoma courts have repeatedly held that a party whose negligence has proximately caused the injuries in question may not seek equitable indemnification from a third party who has also proximately caused those injuries"); *Nat'l Union Fire Ins. Co*., 784 P.2d at 54-55 (holding that "no right of indemnity exists" amongst "concurrent or joint tortfeasors, having no legal relation to one another"); *Stokes v. Lake Raider, Inc*., No. CIV-13-507-KEW, 2014 WL 7375634, at *3 (E.D. Okla. Dec. 29, 2014) (explaining that "comparative negligence of non-parties has no application to strict products liability cases."). Moreover, taking as true NIBCO's allegations that its products are not defective, and the negligent design/installation of the plumbing systems is the sole cause of AMC's damage, there would be no basis to indemnify NIBCO because it would not be responsible for AMC's loss. Accordingly, NIBCO has failed to state a plausible claim for indemnification against either Balfour or Horizon.

## II.     The Contribution Claim

Unlike indemnity, which shifts the entire loss to another party, contribution distributes the loss "among the joint tortfeasors in proportion to their respective negligence, whether or not plaintiff sued all the tortfeasors." *Barringer v. Baptist*

*Healthcare of Oklahoma*, 22 P.3d 695, 698 (Okla. 2001). In Oklahoma, contribution claims are governed by Okla. Stat. tit. 12 § 832. This statute provides a right of contribution "[w]hen two or more persons become jointly or severally liable in tort for the same injury to person or property…even though judgment has not been recovered against all or any of them… ." *Id.* at § 832(A). The statute further provides that "[t]he right of contribution exists only in favor of a tort-feasor who has paid more than their pro rata share of the common liability, and the total recovery is limited to the amount paid by the tort-feasor in excess of their pro rata share." *Id.* at § 832(B). A "pro rata share" means "apportioned according to each tortfeasor's degree of fault." *Nat'l Union Fire Ins. Co.*, 784 P.2d at 57. Importantly, "[a]n allegation that the party against whom contribution is sought is solely liable to the plaintiff, or that the party seeking contribution is not liable at all, is insufficient." *Daugherty v. Farmers Co-op. Ass'n*, 790 P.2d 1118, 1120–21 (Okla. Civ. App. 1989).

   In 2011, the Oklahoma legislature amended Okla. Stat. tit. 23 § 15 to provide that "[i]n any civil action based on fault and not arising out of contract, the liability for damages caused by two or more persons shall be several only and a joint tortfeasor shall be liable only for the amount of damages allocated to that tortfeasor." *Id.* at § 15(A). Relying on this statute, Balfour and Horizon argue that NIBCO cannot maintain a contribution claim because any liability would be several only and NIBCO would therefore never pay more than its pro rata share. NIBCO counters that the plain language of § 832 permits contribution even where liability is several. Indeed, § 832 states that

contribution is available when multiple parties are "jointly or severally liable in tort." This disjunctive phrase plainly provides that either joint liability *or* several liability can give rise to a contribution claim.

Further, § 832 permits contribution when multiple parties are liable "in tort." A tort is a civil wrong other than a breach of contract that encompasses a wide swath of claims, including negligence, intentional torts, and strict liability. *See Kirkland v. Gen. Motors Corp.*, 521 P.2d 1353, 1361 (Okla. 1974) (recognizing that strict products liability is a tort concept). Section 15, on the other hand, is not so broadly worded. It eliminates joint liability only for a "civil action based on fault and not arising out of contract." A strict liability claim, which by its very nature is not based on fault, may therefore fall outside of the parameters of § 15. Because § 832 speaks to a wider range of conduct than § 15, the two statutes are not irreconcilable, and the elimination of joint liability actions based on fault does not necessarily preclude the possibility that a joint tortfeasor will pay more than its proportionate share of liability in some limited situations.

Nevertheless, NIBCO's allegations here fail to state a plausible contribution claim. Contribution is only available "in favor of a tort-feasor who has paid more than their pro rata share of the common liability." Okla. Stat. tit. 12 § 832(B). To the extent NIBCO is held liable on a negligence theory,[2] it will never pay more than its pro rata share because, pursuant to § 15, its liability will be several only. Accordingly, any claim for contribution

---

[2] NIBCO does not contest Horizon's argument that NIBCO is not seeking contribution if found liable on a breach of warranty theory.

derived from NIBCO's alleged negligence is not viable. *See Loos v. Saint-Gobain Abrasives, Inc.,* No. CIV-15-411-R, 2016 WL 5017335, at *6 (W.D. Okla. Sept. 19, 2016).

To the extent NIBCO is held liable on a products liability theory, NIBCO has failed to plead facts showing that there is any risk that NIBCO will pay more than its pro rata share of liability. Further, NIBCO repeatedly alleges that its products were not defective and that the actions of Balfour and Horizon were the sole cause of AMC's losses. Taking those allegations as true, as the Court must, then NIBCO is not a joint tortfeasor and contribution is not appropriate. *See Daugherty*, 790 P.2d at 1120-21 ("An allegation that the party against whom contribution is sought is solely liable to the plaintiff, or that the party seeking contribution is not liable at all, is insufficient"); *see also Loos*, 2016 WL 5017335 at *5 ("If [third party defendant] was indeed the sole cause of the accident, then contribution is inappropriate, as it applies only in cases involving joint tortfeasors"); *Chesapeake Appalachia, L.L.C. v. Cameron Int'l Corp*., No. CIV-13-1118-M, 2014 WL 7187082, at *4 (W.D. Okla. Dec. 16, 2014) (dismissing contribution claim where third party petition "fail[ed] to allege that both [third party defendant] and [defendant] [were] jointly or severally liable to [plaintiff]."). Accordingly, NIBCO has failed to state a plausible claim for contribution against either Balfour or Horizon.

## III. The Statute of Repose

A statute of repose "sets an outer boundary in time beyond which no cause of action may arise for conduct that would otherwise have been actionable." *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co*., 782 P.2d 915, 919 (Okla. 1989). Oklahoma's statute of repose

provides that

> No action in tort to recover damages
>
>> (i) for any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property,
>> (ii) for injury to property, real or personal, arising out of any such deficiency, or
>> (iii) for injury to the person or for wrongful death arising out of any such deficiency,
>
> shall be brought against any person owning, leasing, or in possession of such an improvement or performing or furnishing the design, planning, supervision or observation of construction or construction of such an improvement more than ten (10) years after substantial completion of such an improvement.

Okla. Stat. tit. 12 § 109. Contribution claims under § 832 are subject to the statute of repose. *Lay v. ConocoPhillips Co.*, 453 P.3d 1267, 1271 (Okla. Civ. App. 2019).

The Second Amended Complaint states that 174 of the homes that suffered leaks were "substantially complete" in 2010. Because these homes were substantially complete more than ten years ago, the statute of repose bars NIBCO's claims seeking to recover for damages resulting from a deficiency in the design or construction of the homes. NIBCO asserts that discovery is needed because it is unclear when each home was substantially complete or whether any of the damage resulted from maintenance performed by Horizon or Balfour. This argument does not advance their cause. "Discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim." *Podany v. Robertson Stephens, Inc.*, 350 F.Supp.2d 375, 378 (S.D.N.Y. 2004); *see also*

*Iqbal*, 556 U.S. at 678-679 (explaining that the Rule 8 pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

NIBCO's Third-Party Complaint does not dispute that 174 of the homes were substantially complete in 2010 nor does it contain allegations that Balfour or Horizon may have improperly maintained the homes beyond that time period. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) ("It is well-established…that in determining whether to grant a motion to dismiss, the district court,…[is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint."). Accordingly, Oklahoma's statute of repose bars NIBCO's claims as they relate to the homes substantially complete in 2009 and 2010.

## IV.    Leave to Amend

NIBCO requests leave to amend its Third-Party Complaint should it be found deficient. "'Ideally, if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.'" *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) (quoting 6 C. Wright & A. Miller, Federal Practice & Procedure, § 1483, at 587 (2d ed. 1990)). However, leave to amend is not automatic and may be properly denied where an amendment would be futile. *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2004).

The Court is skeptical that NIBCO can state a viable indemnity or contribution claim. However, at this stage, and considering that the Court should "freely give leave

when justice so requires," FED. R. CIV. P. 15(a)(2), the Court is not willing to conclude that an amendment would be futile. Plaintiff is therefore authorized to file an amended third-party complaint.

## CONCLUSION

IT IS THEREFORE ORDERED that the Motion to Dismiss of Third-Party Defendant Balfour Beatty Construction Company, Inc. [Doc. No. 50] and the Motion to Dismiss of Third-Party Defendant Horizon, LLC [Doc. No. 56] are GRANTED as set forth herein. NIBCO's claims against Balfour and Horizon are dismissed without prejudice. NIBCO's request for leave to amend is also GRANTED. NIBCO's amended third-party complaint shall be filed no later than 14 days from the date of this Order. Any response shall be filed in accordance with the deadline established by the Federal Rules of Civil Procedure.

IT IS SO ORDERED this 21st day of September, 2021.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

12